GRIEVANCE ADMINISTRATOR v FINK

Docket No. 113566. Argued March 7, 2000 (Calendar No. 12). Decided
    June 27, 2000.

Attorney Arnold M. Fink pleaded guilty to a charge of misdemeanor
    assault and battery as a result of a physical attack on another attor-
    ney who was a witness at a deposition. The Grievance Administra-
    tor filed the judgment of conviction, and a hearing panel concluded
    that no discipline was warranted. The Attorney Discipline Board
    vacated the panel's order and issued an order of reprimand. The
    Grievance Administrator appeals.

    In an opinion by Justice TAYLOR, joined by Chief Justice WEAVER,
    and Justices CORRIGAN, YOUNG, and MARKMAN, the Supreme Court
    held:

    When the board issued its order, it did not have the benefit of
    *Grievance Administrator v Lopatin*, 462 Mich 235 (2000), regard-
    ing the use of the American Bar Association standards for imposing
    lawyer sanctions. The matter accordingly is remanded to the board
    for reconsideration and application of the ABA standards, particu-
    larly standard 5.12. In deciding the appropriate sanction in a partic-
    ular case, the ADB is to delineate any aggravating and mitigating fac-
    tors and explain the effect of such factors on the sanction recom-
    mended by the applicable ABA standard.

    Justices CAVANAGH and KELLY concurred in the result only.

*Robert E. Edick*, Acting Grievance Administrator,
*Donald D. Campbell*, Associate Counsel, and *Richard
L. Cunningham*, Associate Counsel, for Attorney
Grievance Commission.

*Bendure & Thomas* (by *Mark R. Bendure*) for the
respondent.

TAYLOR, J. At issue is the appropriate discipline for
an attorney's assault of a witness at a deposition. In
light of our recent decision in *Grievance Administra-*

*tor v Lopatin,* 462 Mich 235; 612 NW2d 120 (2000), adopting on an interim basis the American Bar Association's (ABA) standards for imposing lawyer sanctions, we remand this matter to the Attorney Discipline Board (ADB) for a determination of the appropriate sanction.

Respondent Arnold Fink was an attorney with the Lopatin, Miller law firm. He gave partner Sheldon Miller a stock tip. Respondent did not inform Miller that he made a commission on Miller's purchase of the stock. The investment performed poorly.

Miller filed an action against respondent for breach of fiduciary duty in connection with the stock purchase. After a contentious September 12, 1991, motion hearing, Miller told respondent that he was fired. Respondent nonetheless returned to work to prepare for an out-of-state deposition scheduled for the next day. When Miller returned to the office, he allegedly choked respondent and threatened to kill him. Miller rescinded the termination and respondent continued working with the firm until January, 1992.

Miller was charged in Detroit Recorder's Court in connection with this assault and entered a guilty plea, but it was taken under advisement. The criminal charges were ultimately dismissed. The Grievance Administrator filed a formal complaint against Miller for the assault, but the hearing panel dismissed it, finding it to be "without credible factual basis." No petition for review was filed with the ADB.

The present charges arise out of a deposition of Miller, held on August 8, 1995. Respondent, representing himself, was questioning Miller. There was a good deal of friction between respondent and Miller. The deposition fell apart with the following exchange:

*Q.* [By respondent, representing himself] So if Arnold Fink told you that Share Data would be bought at two dollars a share, and now you go ahead and enter into an entirely different purchase, how is it that you're blaming Mr. Fink?

*A.* [by Miller] Read my complaint, Mr. Fink.

*Q.* Sir, how is it you're blaming Mr. Fink. Answer the question.

*A.* Because the lying stinking son-of-a-b____ took a kickback of three hundred and seventy-five thousand dollars, that's how.

*Q.* Sit the f___ down. Don't you raise your voice at me.

*A.* You asked a question; you got the answer.

*Q.* Sit down.

*A.* Tell me to.

*Q.* Sit down.

*Mr. Schwartz* [Miller's attorney]: Gentlemen, gentlemen—come on.

*Q.* I'll tear your f___ing head off. Sit down.

*A.* Oh, come on, come on, threaten me.

*Mr. Schwartz*: Stop.

*A.* Oh, come on, threaten me.

*Q.* You're—all right, that's it.

*Mr. Schwartz:* Call the police.

*Q.* You c___-sucker.

*Mr. Schwartz*: Call the police. Get out of here. Stop it. Both of you stop it.

[Off the record.]

*Mr. Schwartz*: This deposition is over. That's it. I want a record. The deposition is over. Mr. Fink came around the table to where Mr. Miller was. Mr. Fink attacked Mr. Miller. Mr. Fink choked Mr. Miller and shoved him to the ground, knocking over the chair that Mr. Miller was on . . .

*Mr. Fink*: Yeah right.

*Mr. Schwartz*: . . . and he started to try to strangle Mr. Miller. I tried to separate . . .

*Mr. Fink*: In your dreams.

*Mr. Schwartz*: . . . them and he refused to get off.

*Mr. Fink:* In your dreams.

Respondent later testified about this incident. He explained that Miller, who enjoyed a clear size advantage,[1] cursed at him and stood and leaned over the table during the deposition. Respondent acknowledged that he "just lost it" and "came around the table and shoved [Miller]." He disagreed with Schwartz's description of the events as set forth in the transcript. Respondent testified that he shoved Miller and that Miller went over the chair, but that he did not hit, strangle, or choke Miller.

Respondent was charged with misdemeanor assault and battery for this conduct. On April 10, 1996, he pleaded guilty to this charge.[2] He was fined, placed on probation, and was required to perform community service.

In August 1996, the Grievance Administrator filed the judgment of conviction. The hearing panel initially issued an order of dismissal on December 12, 1996. On July 30, 1997, the ADB issued an order of remand for a hearing in accordance with *Grievance Administrator v Deutch,* 455 Mich 149; 565 NW2d 369 (1997), which held that proceedings initiated by a valid judgment of conviction could not be dismissed. On January 15, 1998, the hearing panel issued an order imposing no discipline. It noted respondent's testimony admitting the altercation and explaining that "there had been a long history of acrimony preceding the deposition and that Mr. Miller had threatened him

---

[1] Respondent testified that Miller is about 6′ 1″, 200-210 lbs, while respondent is 5′ 8″ and about 155 lbs.

[2] The judgment of sentence indicates that he pleaded guilty. In contrast, the register of action indicates that he was convicted after a bench trial.

in the past." It noted that respondent denied that he had choked Miller or shoved him to the ground (as Miller's attorney stated in the deposition transcript). It also noted that respondent had two prior disciplines, but that neither involved assaultive behavior. It then concluded that no discipline was warranted for the following reasons: the exchange of insults and scuffle at the deposition were remote to the administration of justice, respondent's misconduct appeared to have been provoked by Miller, the conduct of respondent and Miller had been "substantially equivalent," and the misconduct was "in the nature of a personal lapse of control by two lawyers . . . who should have known better . . . ." Further, the panel stated that it might have decided otherwise if "the misconduct had occurred in open court or before non-lawyer clients, or resulted in physical injury, or led to a conviction for felonious assault." Finally, it stated that it thought the limited resources of those involved in discipline should be expended in areas other than personal transgressions "not involving lawyer-client relationships or adversely impacting the decorum of the courts or of the legal profession."

On November 6, 1998, the ADB vacated the hearing panel's order and issued an order of reprimand. It deferred to the hearing panel's assessment of respondent's credibility and demeanor and its acceptance of his version of the incident. After noting that both respondent and Miller acted in a "childish, pugnacious, and unprofessional manner," it concluded that respondent "escalated the dispute from verbal sparring to physical contact . . . ." It opined that provocation does not excuse and only rarely mitigates

gross incivility such as what occurred here. The ADB held in pertinent part:

> [T]here is sufficient evidence to convince us that discipline is warranted. Respondent admittedly "lost it." Also, respondent's testimony establishes that he could have retreated from the room had he truly felt threatened. Finally, the argument that no discipline in this case is necessary to balance the ledger also fails. Respondent and Miller may despise each other, but they are attorneys and they have an obligation to refrain from interfering with the administration of justice. We are not persuaded that Fink can shove Miller at a deposition because Miller may have escaped discipline for allegedly similar conduct four years prior.
>
> We have concluded that the imposition of discipline is clearly required in this case. However, we also conclude that a reprimand is appropriate under all of the circumstances. Respondent has engaged in a lengthy career with no record of this type of behavior. This singular, short-lived incident occurred in a case in which respondent was the defendant. His status as a party does not excuse his behavior; an attorney must abide by his or her obligations as an officer of the court even if he or she is also the client. However, respondent may not have fully appreciated how difficult it would be to represent himself in the litigation with Miller. Apparently, respondent did learn this lesson as no other incidents were reported.
>
> In an appropriate case, we will not hesitate to impose a suspension for an attorney's assaultive conduct, particularly that which arises out of the performance of lawyering functions. However, assessing all of the facts here, we conclude that a reprimand fully achieves the objectives of the discipline system. There is no evidence of injury to Mr. Miller or of a pattern of similar incidents. Respondent presents no discernable risk to the public, the courts, or the legal profession in light of the unique circumstances giving rise to this incident. [Citation omitted.]

Additionally, the ADB noted the penalties respondent received in connection with the criminal proceedings. For all these reasons, the ADB vacated the hearing panel's order imposing no discipline and reprimanded respondent.

When the ADB issued this order, it did not have the benefit of this Court's guidance in *Lopatin, supra,* regarding the use of the ABA standards for imposing lawyer sanctions. We accordingly remand this matter to the ADB for application of the ABA standards. Because this is among the first cases requiring application of the ABA standards, we draw the ADB's attention to standard 5.12, which states:

> Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 [which focuses on dishonesty] and that seriously adversely reflects on the lawyer's fitness to practice.

The commentary to this section states in pertinent part:

> Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving *violence*, dishonesty, or breach of trust, or serious interference with the administration of justice are in that category. [Emphasis added.]

This appears to be the standard applicable to the type of conduct at issue. As we explained in *Lopatin, supra* at 240:

> [A]fter determining the recommended sanction, the disciplinary body moves to the third step of the analysis and considers the relevant aggravating and mitigating factors.

> On review of these factors, it then decides whether to increase or decrease the sanction. ABA Standard 9.1.

In the course of deciding the appropriate sanction in a particular case, the ADB is to delineate any aggravating and mitigating factors and explain the effect of such factors on the sanction recommended by the applicable ABA standard.

In accordance with *Lopatin*, we remand this matter to the ADB for reconsideration of the appropriate level of discipline in light of the ABA standards.

WEAVER, C.J., and CORRIGAN, YOUNG, and MARKMAN, JJ., concurred with TAYLOR, J.

CAVANAGH and KELLY, JJ., concurred in the result only.